Concurring opinion filed by Circuit Judge Hughes.
Reyna, Circuit Judge.
General Electric Company petitioned the United States Patent Trial and Appeal Board for inter partes review of U.S. Patent No. 8,511,605. United Technologies Corporation is the assignee of the patent. The Board found the claims not obvious in view of the prior art. General Electric appeals. For the reasons discussed below, we hold that General Electric lacks Article III standing and accordingly, we dismiss the appeal.
BACKGROUND
Appellee United Technologies Corporation ("UTC") is the assignee of U.S. Patent No. 8,511,605 ("the '605 patent"). The '605 patent is generally directed to a gas turbine engine having a gear train driven by a spool with a low stage count low pressure turbine. '605 patent, Abstract. This particular gas turbine engine is designed for use *1352 in airplanes and has an axially movable variable area fan nozzle.
On January 29, 2016, General Electric Company ("GE") filed a petition for inter partes review ("IPR") challenging claims 1 and 2 of the '605 patent on grounds of anticipation and claims 7-11 of the '605 patent on grounds of obviousness. After institution, UTC disclaimed claims 1 and 2, leaving only claims 7-11 at issue. On June 26, 2017, the United States Patent Trial and Appeal Board ("Board") issued a Final Written Decision concluding that the preponderance of the evidence did not show claims 7-11 of the '605 patent to be unpatentable for obviousness. GE timely appealed to this court.
On December 29, 2017, UTC moved to dismiss GE's appeal for lack of standing. UTC asserted that GE lacked standing because it failed to demonstrate a sufficient injury in fact. In support, UTC pointed to this court's decisions holding that an appellant does not automatically possess standing to appeal an adverse Board decision by virtue of serving its petitions in the challenged IPR. GE submitted a response on January 16, 2018, including the Declaration of Alexander E. Long, GE's Chief IP Counsel and General Counsel of Engineering for GE Aviation ("First Long Declaration"). Mr. Long explained that the commercial aircraft engine business operates on a long life-cycle and that airplane engines are designed to meet certain specifications for certain aircraft. Because the design of aircraft engines can take eight years or more, GE develops new engines based on old designs. Mr. Long stated that, in the 1970s, GE developed a geared turbofan engine with a variable area fan nozzle for NASA. GE asserted that the '605 patent impedes its ability to use its 1970s geared-fan engine design as a basis for developing and marketing future geared turbofan engine designs with a variable area fan nozzle, thereby limiting the scope of GE's engine designs and its ability to compete in a highly regulated industry. Mr. Long also declared that designing around the '605 patent restricts GE's design choices and forced GE to incur additional research and development expenses.
We denied UTC's motion without addressing the merits and ordered UTC to brief the issue in its responsive appellate brief. The parties subsequently briefed the standing issue. GE argued that the injuries it suffered include statutory estoppel, economic loss, future threat of litigation, and competitive harm. GE relied on the First Long Declaration as evidence to show its injuries. UTC argued that GE suffered no injury in fact because: (1) UTC has not sued or threatened to sue GE for infringement of the '605 patent ; (2) GE does not offer evidence of a concrete and particularized economic injury because it has not developed an engine that implicates claims 7-11 of the '605 patent ; and (3) statutory estoppel and the competitive standing doctrine do not apply to GE.
We heard oral argument on November 7, 2018. Much of oral argument focused on whether GE had constitutional standing to appeal and whether general statements made in the First Long Declaration were sufficient to establish standing. We subsequently ordered GE to supplement the First Long Declaration and submit any additional declarations that would provide greater specificity regarding the asserted injury GE contends provides sufficient standing to appeal in this matter. We provided UTC with an opportunity to respond.
Each party filed its supplemental submission. GE filed an additional declaration from Mr. Long on November 28, 2018 ("Second Long Declaration"). In his second declaration, Mr. Long stated that Boeing requested information from GE and several of its competitors for engine designs for future Boeing aircrafts. Mr. Long also noted *1353 that Boeing requested information regarding designs for both geared-fan engines and direct-drive engines.
In response to Boeing's request, GE researched a geared-fan engine design that "would potentially implicate [UTC's] 605 Patent." Second Long Decl. ¶ 5. GE asserts it "expended time and money researching and further developing" this technology for the potential business opportunity with Boeing. Id. ¶ 7. Ultimately, GE chose not to submit to Boeing a geared-fan engine design and instead submitted a design for a direct-drive engine of the type used in GE's current engine designs. The record does not indicate why GE submitted a direct-drive engine design instead of a geared-fan engine design. Nor does Mr. Long state whether GE lost this particular bid. He contends only that to maintain GE's competitive position, it needs to be able to meet customer needs with a geared-fan engine design that may implicate the '605 patent.
DISCUSSION
Not every party to an IPR will have Article III standing to appeal a final written decision of the Board. See Phigenix, Inc. v. Immunogen, Inc. , 845 F.3d 1168, 1172 (Fed. Cir. 2017) (citing Cuozzo Speed Techs., LLC v. Lee , --- U.S. ----, 136 S. Ct. 2131, 2143-44, 195 L.Ed.2d 423 (2016) ). To establish standing, an appellant must have suffered an injury in fact that has a nexus to the challenged conduct and that can be ameliorated by the court. Id. at 1171 (citing Spokeo, Inc. v. Robins , --- U.S. ----, 136 S. Ct. 1540, 1545, 194 L.Ed.2d 635 (2016) ). The injury in fact must be "concrete and particularized," not merely "conjectural or hypothetical." JTEKT Corp. v. GKN Auto. Ltd. , 898 F.3d 1217, 1220 (Fed. Cir. 2018) (emphasis omitted) (first quoting Spokeo , 136 S. Ct. at 1545, and then quoting Lujan v. Defs. of Wildlife , 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ).
GE has the burden of showing that it suffered an injury in fact sufficient to confer Article III standing to appeal. See DaimlerChrysler Corp. v. Cuno , 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). It is undisputed that GE did not establish before the Board that it had standing to appeal the Board's Final Written Decision. See JTEKT , 898 F.3d at 1220. Therefore, GE must create a record in this court with the "requisite proof of an injury in fact" sufficient to show that it has standing to appeal. Id. (quoting Phigenix , 845 F.3d at 1171-72 ). As a result, GE has submitted two declarations from Mr. Long and has proffered three theories of harm to support standing: (1) competitive harm; (2) economic losses; and (3) estoppel under 35 U.S.C. § 315(e). For the reasons stated below, we reject GE's arguments.
GE's purported competitive injuries are too speculative to support constitutional standing. See Phigenix , 845 F.3d at 1171 (stating that the injury must be real or imminent). Mr. Long's declarations are the only evidence of standing before the court, and neither shows a concrete and imminent injury to GE related to the '605 patent. Mr. Long does not assert that GE lost bids to customers because it could offer only a direct-drive engine design. Nor does Mr. Long attest that GE submitted a direct-drive engine design to Boeing because of the '605 patent. Mr. Long contends only that GE expended some unspecified amount of time and money to consider engine designs that could potentially implicate the '605 patent. Boeing may have asked for information regarding a possible geared-fan engine design, but there is no evidence that Boeing demanded or required an engine covered by claims 7-11 of the '605 patent, and there is no indication that GE lost the Boeing bid. The evidence shows that GE submitted to Boeing a direct-drive engine *1354 design, but there is no indication as to why it opted not to submit a geared-fan engine design. There is also no evidence that GE lost business or lost opportunities because it could not deliver a geared-fan engine covered by the upheld claims or any evidence that prospective bids require geared-fan engine designs. GE asserts only speculative harm untethered to the '605 patent. Without a real, particularized injury, GE lacks standing to appeal the IPR decision.
We recently addressed the "competitor standing" doctrine in AVX Corp. v. Presidio Components, Inc ., 923 F.3d 1357 (Fed. Cir. 2019). There, we concluded that the appellant lacked Article III standing because it had "no present or nonspeculative interest in engaging in conduct even arguably covered by the patent claims at issue." Id. at 1363. We explained that competitor standing has been found when government action alters competitive conditions. Id. at 1364 (citing Clinton v. City of New York , 524 U.S. 417, 433, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) ). In those circumstances, the government "provides benefits to an existing competitor or expands the number of entrants in the petitioner's market, not an agency action that is, at most, the first step in the direction of future competition." Id. at 1364 (quoting New World Radio, Inc. v. FCC , 294 F.3d 164, 172 (D.C. Cir. 2002) ).
For the competitor standing doctrine to apply, the government action must change the competitive landscape by, for example, creating new benefits to competitors. Put another way, the government action must alter the status quo of the field of competition. Here, the Board's upholding of claims 7-11 of the '605 patent did not change the competitive landscape for commercial airplane engines. See id. ("The government action is the upholding of specific patent claims, which do not address prices or introduce new competitors, but rather give exclusivity rights over precisely defined product features."). Therefore, we see no competitive harm to GE sufficient to establish standing to appeal.
We similarly reject GE's economic losses argument. GE contends that it has been injured by increased research and development costs sustained by attempts to design engines that could implicate the '605 patent and engines that do not implicate the '605 patent. Yet, GE provides no further details. It fails to provide an accounting for the additional research and development costs expended to design around the '605 patent. It provides no evidence that GE actually designed a geared-fan engine or that these research and development costs are tied to a demand by Boeing for a geared-fan engine. The only evidence that GE actually designed a geared-fan engine is the engine that it designed in the 1970s. Any economic loss deriving from the 1970s engine is not an imminent injury. See Lujan , 504 U.S. at 560, 112 S.Ct. 2130 (stating that injury in fact must be actual or imminent). Aside from a broad claim of research and development expenditures, GE has provided no evidence that these expenses were caused by the '605 patent. See id. (requiring "a causal connection between the injury and the conduct complained of"). Therefore, GE's broad claim of economic loss is insufficient to confer standing.
There is also no evidence that GE is in the process of designing an engine covered by claims 7-11 of the '605 patent. Nor has GE demonstrated that it has definite plans to use the claimed features of the '605 patent in the airplane engine market. See JTEKT , 898 F.3d at 1221 (holding appellant lacked standing because it had not established that it had "concrete plans for future activity that creates a substantial risk of future infringement"). UTC has not sued or threatened to sue GE for *1355 infringing the '605 patent. Appellee Br. 36. Therefore, GE's future harm argument fails.
GE also contends that estoppel under 35 U.S.C. § 315(e) creates injury in fact for standing purposes. We have previously rejected the estoppel argument as a basis for Article III standing. Where, as here, the appellant does not currently practice the patent claims and the injury is speculative, we have held that the estoppel provision does not amount to an injury in fact. See, e.g. , AVX Corp. , 923 F.3d at 1362-63 ; Phigenix , 845 F.3d at 1175-76 ; Consumer Watchdog v. Wis. Alumni Research Found. , 753 F.3d 1258, 1262 (Fed. Cir. 2014). We see no need to reach a different conclusion on this record.
CONCLUSION
We have considered GE's remaining arguments and find them unpersuasive. We hold that GE lacks Article III standing to appeal the Board's Final Written Decision and therefore dismiss the appeal.
DISMISSED
COSTS
No costs.